No. 13,026.

51  613
s105  224

## J. A. FAY & EGAN COMPANY ET ALS. VS. MONROE NATIONAL BANK ET ALS.

### SYLLABUS.

The contest was among creditors over the proceeds of the sale.

The mortgage creditor whose mortgage was foreclosed was not a director of the corporation debtor, and was not concerned in so far as related to the payment by the latter of its indebtedness.

The mortgage creditor, holder of notes deposited as collateral security, had the right to foreclose and to have the property sold. The testimony does not disclose as between the two corporations that the property was sold in the proceedings of foreclosure for the purpose of defrauding creditors by change of title. There was no collusive agreement between the two.

ON APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. Potts, J.

A. A. Gunby for Plaintiffs, Appellants.

Hudson, Potts & Bernstein for Defendants, Appellees.

Argued and submitted January 30, 1899.
Opinion handed down February 6, 1899.
Rehearing refused, for reasons assigned, March 7, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiffs, judgment creditors of the Ouachita Excelsior Saw and Planing Mills, Limited, brought an injunction suit against the defendant to enjoin it from foreclosing its mortgage, and to annul the mortgage the latter was seeking to foreclose.

The injunction was bonded by the defendant, and it proceeded with the foreclosure of its mortgage, and had the property mortgaged sold. The property was bought for the bank and at the request of the bank it was afterwards transferred to the West Monroe Lumber Company. The property thus sold was all the property owned by the Ouachita Excelsior Saw and Planing Mills.

The notes upon which the bank foreclosed were held as collateral

security to secure the payment of the amount of its claim against the Ouachita Excelsior Saw and Planing Mill. One of plaintiffs' contentions is that the mortgage was executed in favor of L. D. McLain; that he was not a creditor of the Ouachita Excelsior Saw and Planing Mill, and that he had no right to dispose of the notes. The mortgage securing those notes as to their payment is attacked on a number of grounds, chiefly that the Saw Mill Company did not owe the bank anything, and that it neither owned nor possessed the notes, the basis of the proceedings of foreclosure.

Plaintiff charges, in argument, that the sale was a consent sale, a mere simulation, whereby a number of creditors, including plaintiffs, lost their claims.

The indebtedness of the mill to the Building and Loan Association was thirteen thousand four hundred and fifty-six 60-100 dollars, and the bank six thousand eight hundred and sixty-one 02-100 dollars. There does not seem to be any serious question about the indebtedness to the former. As to the latter, Flournoy, the cashier of the bank, swears that it was due by the Ouachita Excelsior Saw and Planing Mill to the bank.

With reference to the notes deposited as collateral security to secure this last stated sum, the cashier swore:

"Q. Were they delivered to you, then, as collateral for the indebtedness of L. D. McLain, or for the Ouachita Excelsior Saw and Planing Mill?

"A. For the mill, as that receipt states.

"Q. Not for any indebtedness to Capt. McLain?

"A. No, sir."

Further testifying, he said: "Our interest was to get our debt of six thousand eight hundred and sixty-one 02-100 dollars."

The president of the bank testified that the debt was contracted before the creation of the debt due plaintiff.

In the District Court plaintiffs' demand was rejected. From the judgment, plaintiffs prosecute this appeal.

It was shown, by sufficient testimony, that the Ouachita National Bank was a creditor in the amount before mentioned; as such, it had a right to accept notes as collateral security, and at their maturity to foreclose the mortgage by which they were secured.

We take it that the Mill Company was indebted, beyond question, in the amounts before stated, but we understand that the complaint is

directed against L. D. McLain, who was one of the directors of the Mill Company, and against the method followed, which resulted in a transfer of the mill property of the Ouachita Excelsior Saw and Planing Mill Company to another company known as the West Monroe Mill, organized, plaintiff charges, for the purposes of succeeding to the business of the former company, and thereby enable it to escape the execution of its creditors.

The bank had the right to foreclose its mortgage. The notes that had passed through the hands of one of the directors of the Mill Company to facilitate the transaction, as we take it, and not with the view of benefitting the director, became its notes in due course of business. The intervention of the director in the negotiation which resulted in the bank becoming owner of these notes in good faith, did not affect its right to collect them.

The insistence is that no money was paid by the bank, but this is not sustained by the testimony. It is true that the bank claimed the face value of the notes it held, and obtained an order of seizure for the whole, while, in reality, the principal was considerably less, a claim, it is true, which should not have been made, yet a demand for a larger amount than should have been claimed does not affect the right to collect the sum actually due.

After the injunction had been bonded the property was offered for sale by public auction in accordance with the terms of the advertisement, made in the foreclosure proceedings, and it was adjudicated to an attorney, as we take it, acting for the bank. We do not understand that the right to bond *vel non* is before us for decision.

The attorney, shortly after, in accordance with the direction of his principal, sold the property to the West Monroe Mill Company.

In argument at bar, and in the brief, complaint was directed against their adjudication and subsequent sale to the West Monroe Lumber Company.

The judge of the District Court states, in his reasons for judgment, that he refused to admit testimony to show a collusive agreement to sell this property and have it purchased by the West Monroe Lumber Company for the purpose of defrauding creditors of the Ouachita Excelsior Mill Company, as nothing of this sort was mentioned in the allegations. We agree with our learned brother of the District Court, it was not an issue of the case.

As to pleadings, of course, plaintiffs must specifically set forth the

grounds upon which they base their action, but if we should take it that the testimony received, without objection, reformed the pleadings, it, the testimony admitted, does not sustain a cause against the West Monroe Lumber Company, a corporation not responsible for individual acts of a director.

This company bought the property virtually from the bank, and in the light of the evidence before us the corporation itself has committed no wrong for which it can be held in these proceedings. We have not found ground to annul the act of sale made to the West Monroe Lumber Company. By means of its purchase, the price, part of which went toward paying a portion of the claim of one of the plaintiffs, was paid or a settlement equivalent to payment was entered into with the creditor, the bank. The following may serve to illustrate: A proposes to B to buy C's property mortgaged to B, provided in case of purchase at public auction B will assist him, A, in paying the price. The transaction is not condemnable under the law even though it may have the affect of reducing C to a condition of absolute insolvency. The manoeuvers of others can not affect the rights of A, who becomes the owner.

Here, the West Monroe Lumber Company may be said to be in the position of A.

If there had been a predetermination to wreck the Ouachita Excelsior Saw and Planing Company, with the evidence before us, and under the pleadings, it would not be possible to hold the West Monroe Lumber Company, an independent organization, responsible for the wreckage. It stood for the price at which the property was adjudicated. It was divided among the creditors, prior in rank of claims, and among them, to an amount stated, was one of the plaintiffs. There was, to that extent, so far as we have found, no offending against the law; no collusive agreement.

The directors, as we understand, are not claiming anything in opposition to creditors. It is a contest among creditors over the proceeds of a sale made in foreclosure proceedings. The case does not come within the application of the rule laid down in Cahill vs. People's Slaughter House Company, 47 Ann., 1483.

We well understand that a president has no right in the interest of the bank he represents, and much less in his own, to form corporations to defeat creditors. Such combinations do not meet with the law's sanction, but in this case in which the purpose was to have an-

nulled a mortgage in face of the fact that all the evidence proves the reality of the mortgage, we have not found it possible, on allegations made, in law, to hold that the combination charged was entered into; besides, the new company is not such a *corpus sine animus* as it would have to be, in order not to take it into account at all—to ignore it altogether. It is an "intellectual body, created by law, composed of individuals united under a common name, and as such entitled to citation and to stand in judgment in all matters affecting its rights," and as such entitled to hold the property it bought.

There is a question about three hundred and sixty-three dollars of the price, as to how it was credited, if at all. As to this amount, plaintiff's rights are reserved as in the case of *non*-suit.

For reasons assigned it is ordered, adjudged and decreed, that the judgment appealed from is affirmed, save as to three hundred and sixty-three dollars, the right to which is reserved as just stated.

### On Application for a Rehearing.

BREAUX, J. We have re-examined this case, and reconsidered the law and the facts involved.

We are convinced that our decree is correct, particularly for the reason that the company, West Monroe Mill, owner of the property, whose title is attacked, is not a party.

We have not changed our views, as heretofore expressed, save in an unimportant particular.

The Code of Practice directs:

"If the judgment be reversed, in whatever degree it may be, the appellee shall pay the costs."

Having disturbed the judgment below in matter involving three hundred and sixty-three dollars, and reserved to each party (plaintiff and defendant) his right as to claim, we think the change is enough to carry costs.

The question being plain enough, without further hearing, the change as relates to costs is ordered.

Our decree remains; the defendant and appellee to pay the costs.

Rehearing refused.